USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 93-1699 NORTHEAST DORAN, INC., Plaintiff, Appellant, v. KEY BANK OF MAINE, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Torruella, Selya, and Stahl, Circuit Judges. ______________ ____________________ Alfred C. Frawley with whom Peter D. Lowe and Brann & Isaacson __________________ ______________ ________________ were on brief for appellant. David B. Van Slyke with whom Michael Kaplan, Jonathan S. Piper, ___________________ ______________ __________________ and Preti, Flaherty, Beliveau & Pachios were on brief for appellee. ___________________________________ ____________________ January 28, 1994 ____________________ STAHL, Circuit Judge. In its complaint, Northeast _____________ Doran, Inc. ("Doran") alleged that Key Bank of Maine ("Key"), mortgagee and subsequent vendor of the property at issue, was liable for clean-up costs under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). The district court dismissed the complaint for failure to state a claim, reasoning that Key's knowledge of potential contamination did not render it liable under CERCLA. We affirm. I. I. __ FACTUAL BACKGROUND AND PRIOR PROCEEDINGS FACTUAL BACKGROUND AND PRIOR PROCEEDINGS ________________________________________ In December 1989, Ed Harmon & Sons, Inc. ("Harmon") purchased property located at the Skowhegan Industrial Park in Skowhegan, Maine ("the property"). The purchase was financed with a mortgage from Key Bank. In June of 1990, Doran leased the property from Harmon. In July of 1991, with Harmon unable to meet its mortgage payments, Key Bank sought and received a Judgment of Foreclosure and Order of Sale from the Superior Court of the State of Maine and made plans to auction the property. On October 21, 1991, Key hired an independent consultant to conduct a Maine Superlien Site Assessment ("the assessment") of the property. Two weeks later, on November 7, 1991, without having received the results of the assessment, Key -2- 2 completed its disclosure statement for use in the auction prospectus. Key stated in that document that it had no knowledge of any hazardous materials on the property. On November 18, 1991, Key received the results of the assessment, which showed potential groundwater contamination on the property. Key took no steps to make the results of the assessment known to bidders prior to the auction. At the auction on November 21, 1991, Doran, who remained in possession of the property, entered the highest bid and signed a purchase and sale agreement for the property. When Doran sought financing from Key for its purchase of the property, Key refused, citing for the first time the result of the assessment. Doran, apparently able to obtain other financing, purchased the property from Key via quitclaim deed on December 17, 1991. After purchasing the property, Doran notified the Maine Department of Environmental Protection ("DEP") of potential contamination on the property. DEP assessed costs against Doran, the "owner" of the property under CERCLA. Doran brought an action in the United States District Court for the District of Maine, seeking a declaratory judgment that Key was liable for clean-up costs on the property. Among other things, Doran argued that Key, unlike similarly situated secured creditors, was not entitled to CERCLA's -3- 3 "security interest holder" exemption and that a right of action existed due to Key's knowledge of potential contamination prior to and at the time of sale. The district court dismissed Doran's complaint for failure to state a claim upon which relief could be granted, finding that Key was not a liable party under CERCLA and its relevant amendments. We affirm. II. II. ___ DISCUSSION DISCUSSION __________ "We review a Rule 12(b)(6) dismissal de novo, __ ____ crediting all allegations in the complaint and drawing all reasonable inferences favorable to the plaintiff." Heno v. ____ FDIC, 996 F.2d 429, 430 (1st Cir. 1993); see also Scheuer v. ____ ___ ____ _______ Rhodes, 416 U.S. 232, 236 (1974). ______ Our analysis begins with CERCLA's definition of liable parties. CERCLA, 42 U.S.C. 9607(a), provides that liability for environmental clean-up shall attach, inter _____ alia, to: ____ (1) the owner and operator of a vessel or a facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of . . . . While Key, having obtained a judgment of foreclosure on the property, might appear at first glance to be an "owner" or "operator" of the property for purposes of -4- 4 section 9607(a), CERCLA's definition provisions clearly dictate otherwise. Under 42 U.S.C. 9601(20)(A), the terms "owner" or "operator" "do not include a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility." As we recently stated in Waterville Indus., Inc. v. Finance Auth. of Maine, 984 _______________________ ________________________ F.2d 549, 552 (1st Cir. 1993), "the purpose of the statutory exception, apparent from its language and statutory context, is to shield from liability those `owners' who are in essence lenders holding title to the property as security for the debt." Moreover, "[s]o long as the [security interest holder] makes a reasonably prompt effort to divest itself of its unwelcome ownership, we think continued coverage under the exception serves its basic policy: to protect bona fide lenders and to avoid imposing liability on owners who are not in fact seeking to profit from the investment opportunity normally presented by prolonged ownership." Id. at 553. ___ Doran does not allege, nor could it on the record, that Key's effort to divest itself of title to the property was anything less than "reasonably prompt." Id. More ___ importantly, in support of its allegation that Key held the property for a purpose other than as security for its _____ ____ mortgage on the property, Doran cites only the existence of the assessment, and Key's withholding of its results. -5- 5 Standing alone, however, the existence of a site assessment, even one which reveals the existence of possible environmental contamination and which is concealed from the eventual purchaser, is insufficient to remove a holder from the "security interest holder" exception in section 9601(20)(A). See Waterville Indus., 984 F.2d at 554 (holding ___ _________________ that security interest holder exception in section 9601(20)(A) applied despite fact that security holder sold the property "without making full disclosure of the hazardous wastes or of notices of violation sent to [the security interest holder]"); see also United States v. McLamb, 5 F.3d ___ ____ ______________ ______ 69, 70-74 (4th Cir. 1993) (similar, where security interest holder "learned of the previous oil spill at [property] after the foreclosure but prior to selling the property").1 Accordingly, Doran's complaint fails to allege any set of facts under which Key could be liable under CERCLA. Doran also argues that the security interest exception should not apply in view of 42 U.S.C. ____________________ 1. Recent regulations promulgated by the United States Environmental Protection Agency (EPA), though prospective and not dispositive in the instant case, also indicate that security interest holders do not compromise their eligibility for section 9601(20)(A) status by conducting environmental audits. See 40 C.F.R. 300.1100; Final Rule on Lender ___ Liability Under CERCLA, 57 Fed. Reg. 18,344, 18,353 (Apr. 29, 1992). See also McLamb, 5 F.3d at 73 & n.8; Waterville ___ ____ ______ __________ Indus., 984 F.2d at 553 & n.6. ______ -6- 6 9601(35)(C),2 which holds liable those defendants who "owned" and then transferred property with "actual knowledge" of contamination. As noted above, however, Key was never an "owner" as that term is defined by CERCLA. See supra at pp. ___ _____ 4-6. Nor do we find any support for Doran's argument that section 9601(35)(C) somehow renders liable parties who would otherwise fall under the security interest holder exception of section 9601(20)(A).3 Thus, we find no means for applying section 9601(35)(C) to Key. ____________________ 2. Section 9601(35) provides: Nothing in this paragraph or in section 9607(b)(3) of this title shall diminish the liability of any previous owner or operator of such facility who would otherwise be liable under this chapter. Notwithstanding this paragraph, if the defendant obtained actual knowledge of the release or threatened release of a hazardous substance at such facility when the defendant owned the real property and then subsequently transferred ownership of the property to another person without disclosing such knowledge, such defendant shall be treated as liable under section 9607(a)(1) of this title and no defense under section 9607(b)(3) of this title shall be available to such defendant. 3. Rather, the cases cited by Doran apply section 9601(35)(C) solely to parties who were otherwise "owners" under section 9607(a). See, e.g., Westwood Pharmaceuticals, ___ ____ _________________________ Inc. v. National Fuel Gas Distrib. Corp., 964 F.2d 85, 90-91 ____ _________________________________ (2nd Cir. 1992) (holding that section 9601(35)(C) applies to "owners" under both sub-section (1) and sub-section (2) of section 9607(a)); see also Fallowfield Dev. Corp. v. Strunk, ___ ____ ______________________ ______ 1993 WL 157723, *5 (E.D. Pa.) ("In order for [plaintiff] to establish its prima facie case . . . it must prove that [defendants] are within one of the [four] classes of persons subject to liability under section 9607(a)."). -7- 7 In sum, here, as in Waterville Indus., 984 F.2d at _________________ 554, the right of contribution is a statutory one that turns solely on Key's status as an "owner," a status defeated by the security interest exception. Any other claims which Doran may have against Key are appropriately brought in another forum. Cf. id.; McLamb, 5 F.3d at 73-74 (finding no ___ ___ ______ requirement of "commercial reasonableness" under CERCLA). III. III. ____ CONCLUSION CONCLUSION __________ For the foregoing reasons, the order of the district court dismissing Doran's complaint for failure to state a claim is Affirmed. _________ -8- 8