Hebert v. NHDCYS                          CV-90-245-M    09/29/95

UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Scott Hebert, by and Through
His Mother and Next Friend,
Laurette Hebert; and Laurette Hebert,
      Plaintiffs,

      v.                                         Civil No. 90-245-M

New Hampshire Division for
Children and Youth Services,
      Defendant.


                              O R D E R


      Plaintiffs, Scott and Laurette Hebert (the "Heberts"), bring

this motion for attorneys' fees under the Individuals with

Disabilities Education Act ("IDEA").  20 U.S.C. 1400, et seq.

The attorneys' fees which the Heberts seek were incurred in an

underlying IDEA suit that the Heberts filed against defendant,

the director of the New Hampshire Division for Children, Youth

and Families ("DCYF").[1]  The parties settled the underlying suit,

expressly reserving the issue of attorneys' fees.  DCYF objects

to the Heberts' motion for fees.

_____

      [1] After the Heberts instituted the underlying suit, the name
of the defendant's division was changed from the "Division for
Children and Youth Services" to the "Division for Children,
Youth, and Families."  This order will refer to defendant by its
present label.

## I. BACKGROUND

The Heberts' motion for fees arises out of a civil rights suit they filed against the Manchester, New Hampshire, School District, the Director of Special Services for the Manchester School District, and the Director of the DCYF on May 1, 1990. In that suit, brought under the IDEA and other civil rights statutes, the Heberts sought many forms of relief for Scott Hebert, a handicapped student. First, the Heberts sought declaratory and injunctive relief designed to provide Scott with a free and appropriate education, meeting the standards set by applicable state and federal laws. Second, the Heberts sought compensatory damages from the Manchester School District and compensatory and punitive damages from the Director of Special Services for the District. Finally, the Heberts sought a permanent injunction barring DCYF from recovering from the Heberts any costs associated with several residential education services provided to Scott beginning on February 16, 1988.

Prior to filing the underlying suit in this court, the Heberts litigated their grievances at an administrative hearing. In December, 1990, the Heberts filed a motion in this court seeking to have the administrative record transcribed at the

2

United States' expense.  The administrative record contained testimony that was relevant to the civil rights suit.  The Heberts eventually prevailed on their motion.

When the audio tapes of the administrative hearing were transcribed, the parties discovered that portions of the taped testimony were either missing or difficult to understand.  Among the missing portions was the testimony of Laurette Hebert.  In February, 1992, the Court entered an Order requesting counsel for all parties to recommend, in written memoranda, solutions to the problem of the missing testimony.  The parties produced the requested reports.

While the Heberts' suit was pending, Scott Hebert also participated as a member of the plaintiff class in James O., et. al. v. Marston, et. al., a suit filed on behalf of all educationally handicapped students in New Hampshire who were placed in educational facilities pursuant to New Hampshire law and who were not receiving a free and appropriate public education.  The plaintiff class sued the Commissioner of the New Hampshire Department of Education and the members of the State Board of Education; DCYF was later joined as a defendant.  The class sought declaratory and injunctive relief designed to ensure

3

that all class members received a free and appropriate education, meeting the standards set by applicable state and federal laws.

On August 23, 1991, this court approved a consent decree resolving all of the claims in the James O. class action suit. Under the consent decree, DCYF waived all of its rights to reimbursement for costs associated with residential placement of class members prior to January 7, 1988. DCYF's claims for reimbursement for costs incurred after January 7, 1988 would, according to the consent decree, be decided individually by Department of Education hearing officers. The consent decree also awarded attorneys' fees to the class, but explicitly excluded reimbursement for work performed on individual claims.

On October 5, 1994, the Heberts settled their individual suit with the Manchester School District and the Director of Special Services for the District. On February 4, 1995, the Heberts settled their individual suit with DCYF.

Because the Heberts' claims for declaratory and injunctive relief designed to force DCYF to provide Scott with free and appropriate education were fully addressed in the James O. consent decree, the Hebert/DCYF settlement focused only on the parties' liabilities for costs associated with the residential placement of Scott Hebert after February 16, 1988. As a

4

condition of the settlement, DCYF waived its rights to seek reimbursement from the Heberts for costs associated with any residential placement and educational programs. In return, the Heberts waived any claims against DCYF for acts and omissions which occurred up to the date of the settlement. While the settlement agreement did not award the Heberts attorneys' fees, it expressly reserved the issue for future resolution.

Now, the Heberts request this court to award them attorneys' fees against DCYF. Specifically, the Heberts request fees for legal work performed in the following matters:

1) One half of the time spent drafting the complaint and in forma pauperis papers in the underlying suit;

2) Reviewing DCYF's answer and assessing discovery needs;

3) Preparing for and attending pretrial conferences; and

4) Researching and preparing a memorandum in response to the court's request for suggestions on remedying gaps in the administrative record.

The Heberts have not requested fees for legal work performed in the following matters:

1) Countering the Manchester School District's motions to dismiss;

2) Obtaining the transcript of the administrative record at the United States' expense;

3) One half of the time spent drafting the complaint and in forma pauperis papers in the underlying suit.

5

The Heberts claim a total of $11,753.13, plus any additional attorneys' fees earned in connection with their claim for fees. In support of their claim, the Heberts have produced the relatively detailed time records of their attorneys, Ronald Lospennato and Peter Smith.

## II.  DISCUSSION

The Heberts move for attorneys' fees under the Individuals with Disabilities Education Act, 20 U.S.C. 1400 et seq.  Section 1415(e)(4)(B) of the Act states:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.

Id.  Courts interpreting the statute have construed it consistently with the interpretation given 42 U.S.C. § 1988(b) in Hensley v. Eckerhart, 461 U.S. 424 (1983).  See Combs v. School Bd., 15 F.3d 357, 360 (4th Cir. 1994).  Under Hensley, a plaintiff must show two things in order to be entitled to a fee award.  First, the plaintiff must show that he or she was the prevailing party in the underlying action.  Id. at 433.  Second, the plaintiff must show that the amount of fees requested is reasonable.  Id.

6

## A.    Prevailing Party

Hensley and its progeny have adopted a very "generous formulation" of what constitutes a "prevailing party." Hensley, 461 U.S. at 433.  In Farrar v. Hobby, 113 S. Ct. 566 (1992), the Supreme Court's most recent opinion to address the availability of attorneys' fees in civil rights cases, the court distilled its prior definitions of "prevailing party."  "[P]laintiffs may be considered `prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Id. at 572 (citing Hensley, 461 U.S. at 433).  The suit may be resolved through judgment, settlement, or a consent decree.  Id. at 573 (citing Maher v. Gagne, 448 U.S. 122, 129 (1980)).  However, the resolution of the suit must "chang[e] the legal relationship" between the plaintiff and defendant.  Id. (quoting Texas State Teachers Assn. v. Garland Indep. School Dist., 489 U.S. 782, 792 (1989)).  And, "[w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement."  Id. (citing Hewitt v. Helms, 482 U.S. 755, 764 (1987)).

Here, the Heberts are prevailing parties within the meaning of 20 U.S.C. § 1415(e)(4)(B).  In their complaint, the Heberts

sought "a permanent injunction barring DCYF from recovering for any costs associated with" the residential, counselling, and evaluation services utilized by Scott Hebert. (Hebert complaint at 28, ¶ C.) In the settlement agreement between the parties, DCYF agreed to "waive any rights" it had to "seek reimbursement or recover" any costs associated with counselling and evaluation services or residential placement. (Settlement Agreement at 1, ¶ 1.) Therefore, the Heberts did succeed on a significant issue and achieved some of the benefit sought in bringing the suit.

In addition, the settlement changed the legal relationship between the parties. Under the terms of the James O. consent decree, DCYF waived the right to seek reimbursement for the costs it incurred in evaluating, counselling, and placing class members prior to January 7, 1988. Because DCYF only began providing services to Scott on February 16, 1988, DCYF had a right to pursue its claims for reimbursement through the mechanism set up in the consent decree. In its settlement agreement with the

8

Heberts, however, DCYF waived that right.[2]  Therefore, the

settlement changed the legal relationship between the parties.

Finally, the benefit the Heberts obtained did inure to them

immediately upon settlement; they were no longer subject to suit

for reimbursement.  Thus, the Heberts "prevailed" for purposes of

awarding attorneys' fees under 20 U.S.C. § 1415(e)(4)(B).

**B.    Reasonableness of Requested Fees**

Under the IDEA, the prevailing party is entitled to

"reasonable attorneys' fees."  The reasonableness of the fees

requested is determined through reference to the result of the

suit.  "Indeed, 'the most critical factor' in determining the

reasonableness of a fee award 'is the degree of success

obtained.'"  <u>Farrar</u>, 113 S. Ct. at 574 (quoting <u>Hensley</u>, 461 U.S.

at 436).  More specifically, the amount of attorneys' fees the

prevailing party receives "should be based on the work performed

---

[2] DCYF claims that, by the time it signed the settlement agreement with the Heberts, DCYF had already waived its right to pursue a reimbursement claim through a letter sent to the Administrator of the <u>James O.</u> consent decree.  In the letter, DCYF states that it will not seek reimbursement from class members through the mechanism set up in the consent decree. (DCYF Letter of Apr. 2, 1993.)  However, this letter was not sent to the Heberts.  In addition, the letter merely states DCYF's policy on the question of reimbursement claims; it does not legally bind DCYF to that position <u>vis</u> <u>a</u> <u>vis</u> the Heberts.

on the issues in which they were successful." <u>Nadeau v. Helgemoe</u>, 581 F.2d 275, 279 (1st Cir. 1978).

DCYF claims that the Heberts obtained, at best, a "technical" or "nominal" victory and, as a result, "should receive no attorney's fees at all." <u>Farrar</u>, 113 S. Ct. at 575. This contention is based on the fact that the Heberts were successful on only one of their ten prayers for relief in the underlying suit; all other issues were settled in the <u>James O.</u> consent decree or in a separate settlement with the other defendants. The Supreme Court, however, has counselled against taking such a "mathematical approach" to defining success in a lawsuit. <u>Hensley</u>, 461 U.S. at 435-36 n.11. Here, the Heberts' victory was real and substantial; the relief they did receive was precisely that prayed for in their complaint. Therefore, the amount of attorneys' fees they receive should be based on the work performed on the issue on which they were successful.

The Heberts have requested attorneys fees for work performed on:

1)    One half of the time spent drafting the complaint and <u>in forma pauperis</u> papers in the underlying suit;

2)    Reviewing DCYF's answer and assessing discovery needs;

3)    Preparing for and attending pretrial conferences; and

10

4) Researching and preparing a memorandum in response to the court's request for suggestions on remedying gaps in the administrative record.

They have provided reasonably detailed time records to support this request.

I find that all of the work for which attorneys' fees are requested was related to the issue of waiver on which the Heberts ultimately prevailed through settlement. Certainly, the time spent filing a complaint and accompanying papers, assessing discovery needs, and attending pretrial conferences was necessary to the successful pursuit of the waiver issue. And, in the process of pursuing their claim, the Heberts were ordered by the court to produce a report on the deficiencies in the administrative record. Accordingly, the New Hampshire Division for Children, Youth, and Families shall pay the Heberts attorneys' fees in the amount of $11,753.13, plus such additional reasonable attorneys' fees the Heberts' counsel earned in connection with the claim for fees. The parties shall endeavor to reach agreement on that amount, and the court will retain jurisdiction to reopen this case should the parties fail to agree within 60 days of the date of this order.

11

**III. CONCLUSION**

For the foregoing reasons, the Heberts are "prevailing parties" within the meaning of 20 U.S.C. § 1415(e)(4)(B), and, as such, are entitled to attorneys' fees in the amount of $11,753.13, plus such additional reasonable fees earned in connection with this claim for fees. The plaintiffs' motion for fees (document no. 61) is granted. Judgment shall be entered accordingly.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

September 29, 1995

cc:  Nancy J. Smith, Esq.
     Ronald K. Lospennato, Esq.

12