State of NH v. Adams, et al.          CV-94-573-M    01/21/98
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


State of New Hampshire
Department of Education and
Department of Corrections,
      Plaintiffs

      v.                                    Civil No. 94-573-M

Marc Adams and
Manchester School District,
      Defendants



                          O R D E R


      In November of 1994, the New Hampshire Department of

Education and the New Hampshire Department of Corrections

(collectively, the "State"), filed this civil action, appealing a

final administrative order issued pursuant to the Individuals

with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et

seq.  Defendants, the City of Manchester School District (the

"School District") and Marc Adams, responded, seeking an order

affirming both the preliminary and final administrative orders

issued by the hearing officer.


      In March of 1996, the court granted, in part, the State's

motion for summary judgment and vacated the hearing officer's

orders dated July 14 and October 6, 1994.  The court then denied

the School District's motion for summary judgment and Adams'

motion to dismiss.  Subsequently, the parties resolved their

remaining differences and executed a settlement agreement.

Claiming to have been the "prevailing party," Adams now moves for an award of attorneys' fees of approximately $100,000 and costs of roughly $6,000.

## Legal Standard

That portion of the IDEA under which Adams seeks attorneys' fees provides:

> In any action or proceeding brought under this subsection, the court, _in its discretion_, _may_ award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B) (emphasis supplied). Such fees may be recovered for legal services provided at both the administrative and appellate levels. See Burpee v. Manchester School Dist., 661 F. Supp. 731, 732 (D.N.H. 1987).

Although the Court of Appeals for the First Circuit has yet to address the issue, several other circuits have held that the phrase "prevailing party" has the same meaning under the IDEA as it does under 42 U.S.C. § 1988. See, e.g., Combs v. School Bd. of Rockingham County, 15 F.3d 357, 360 (4th Cir. 1994) ("The term 'prevailing party' connotes the same general meaning under § 1415(e)(4)(B) and 42 U.S.C. § 1988, and cases interpreting both sections apply the same principles to determine a plaintiff's entitlement to attorney's fees."); see also, Beard v. Teska, 31 F.3d 942, 950 (10th Cir. 1994); Borengasser v. Arkansas State Bd.

2

of Educ., 996 F.2d 196, 199 (8th Cir. 1993); Krichinski v. Knox County Schools, 963 F.2d 847, 849 (6th Cir. 1992); Wheeler v. Towanda Area School Dist., 950 F.2d 128, 132 (3rd Cir. 1991); Barlow-Gresham Union High School Dist., v. Mitchell, 940 F.2d 1280, 1284 (9th Cir. 1991); Angela L. v. Pasadena Indep. School Dist., 918 F.2d 1188, 1193 (5th Cir. 1990).

In Farrar v. Hobby, 506 U.S. 103 (1992), the Supreme Court described a "prevailing party," in the context of section 1988, as follows:

> [A] plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

Id. at 111-12. (emphasis supplied). Accordingly, the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fees statute." Texas Teachers' Assoc. v. Garland School Dist., 489 U.S. 782, 792-93 (1989). Success on any significant issue in the litigation which achieves some of the benefit sought in bringing the action is sufficient to qualify the recipient of the benefit as a "prevailing party." Id. at 791-92 (citing Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).

3

If the court finds that an award of attorneys' fees is justified under the statute, it must then determine whether the sum requested is reasonable. "Whether an award of attorney's fees is reasonable depends, in part, upon the degree of success obtained by the plaintiff." Urban v. Jefferson Cty. School Dist., 89 F.3d 720, 729 (10th Cir. 1996) (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). In fact, there are certainly circumstances under which a party who technically prevails, "should receive no attorney's fees at all." Farrar, 506 U.S. at 115.

## Background

The factual background to this litigation is set forth in detail in the court's orders dated March 21, 1996, and April 17, 1997. The facts pertinent to the instant dispute are as follows.

In 1991 Adams pled guilty to a charge of manslaughter in connection with the death of a three year old girl. He was sentenced to a term of 15 to 30 years in the New Hampshire State Prison, where he is currently incarcerated. In February of 1992, Adams requested a due process hearing under the IDEA, asserting that he was entitled to, but was not receiving, a free and appropriate public education in the prison. Prior to the due process hearing, however, the parties executed a settlement agreement, which the hearing officer then entered as his final order (the "Stipulated Order"). That order provided that the

4

School District (with input from the State) would develop an Individualized Education Plan ("IEP") for Adams for each year of a two-year compensatory education program and that the State would implement the IEP at the prison. Accordingly, all parties agreed that Adams was entitled to, and would in fact receive, a free and appropriate public education while in the State's custody.

Due to his own misbehavior and failure to comply with prison regulations, however, Adams was periodically confined to the prison's Secure Housing Unit ("SHU" or "C-5"), which precluded the State from fully implementing the IEP as written. Adams and the School District then requested another due process hearing, at which they argued that the State had breached the terms of the Stipulated Order by failing to implement the IEP as written, notwithstanding the substantial changes in circumstances surrounding Adams' incarceration. The State objected, claiming that Adams' IEP had to be modified to take into account his periodic misbehavior and the necessity of housing him in SHU. The hearings officer framed the issues presented to him as follows:

> Mar[c] A. seeks additional compensatory education and seeks an order from the Hearing Officer requiring the State Department of Corrections and the State Department of Education to implement the IEP as written. On behalf of the Department of Education, Attorney Nancy Smith argued that . . . [v]alid prison regulations justify a need to change the IEP so as to provide for essentially a different educational component when Mark A. is in the C-5 classification.

5

> The Department of Corrections had been providing five hours per week of tutoring and that has now been reduced to 3½ hours per week due to completion of certain courses by Mark A. <u>Essentially the Department of Corrections argues that alternative IEPs need to be developed depending on Mark's classification and therefore his placement within the prison</u>.
>
> The real issue presented in this case is whether a Hearing Officer can order the Department of Corrections to allow Mark A. to attend classes in other parts of the prison campus while he is classified C-5. <u>Mark A. argues that he should be allowed to do so in order to receive a Free Appropriate Public Education. The Department of Corrections argues that prison regulations and safety of other prisoners require that alternative IEPs be developed so as to take into account Mark's actual placement within the prison system</u>.

Pre-Hearing Order at 2-3 (February 8, 1994) (emphasis supplied). Thus, the issue was not <u>whether</u> Adams was entitled to compensatory education. Rather, the question was <u>how</u> that compensatory education would be delivered to him. The hearing officer agreed with Adams' position and, among other things, ordered the State to implement Adams' IEP, without regard to his prison security classification and notwithstanding the fact that he might periodically be confined to SHU.

The State appealed the hearing officer's decision to this court, which noted:

> The issue presented in this case is not whether Adams is entitled to a free and appropriate education while incarcerated at the New Hampshire State Prison; it is clear (and the State does not dispute) that he is. Rather, the issue is whether Adams is entitled to <u>the specific educational program described in the IEP developed in early 1993</u>, which, as construed by the hearing officer, calls for 5.25 hours of daily

6

> instruction, whether Adams' misbehavior causes him to be reclassified to C-5 status and confined in SHU from time to time or not.

N.H. Dept. of Educ. v. Adams, No. 94-573-M, slip op. at 16 (D.N.H. March 21, 1996) (emphasis in original).  Again, it is clear from the record that what was not in dispute was whether Adams was entitled to a free appropriate public education while in the custody of the State.  All parties agreed that he was. The court then concluded that Adams was not entitled to full implementation of the IEP to the extent that it conflicted with the State's legitimate penological and/or security concerns. Accordingly, the court vacated the hearing officer's administrative orders to the contrary.

At that point, the issue presented to this court had been resolved in favor of the State and against Adams.  To the extent that Adams' IEP could not be fully implemented, the parties were left to formulate a new one, which took into proper account not only Adams' educational needs, but also the State's legitimate penological and security concerns.  With that, the court afforded the parties an opportunity to resolve the dispute without further court intervention.  The court also indicated that, should the parties be unwilling or unable to settle that matter amicably, it was equally willing to appoint an expert and/or master to recommend an appropriate IEP for Adams, taking into account the need to strike a reasonable balance between the prison's

7

legitimate penological interests and Adams' entitlement to a free and appropriate public education.

The parties opted for the former alternative, reached an agreement, and formulated a new IEP for Adams. Consistent with the court's order, the revised IEP, unlike its predecessor, acknowledges the State's authority to discipline Adams for reasons related to legitimate security and penological concerns, notwithstanding some possibly inconsistent provision(s) in his IEP.

## Discussion

Despite the fact that this court vacated the hearing officer's administrative orders (which Adams sought to affirm), and the parties have negotiated a revised IEP which expressly acknowledges that the State's legitimate security interests are <u>not</u> subordinate to Adams' right to a free and appropriate public education (contrary to Adams' earlier position), Adams claims that he "prevailed" in this litigation and should be awarded approximately $100,000.00 in attorneys' fees. The court disagrees.

I. <u>The Conflict Between Adams' IEP and Legitimate Prison Regulations and Security Concerns</u>.

As noted above, the issue presented on appeal to this court was whether the State breached the terms of the Stipulated Order by failing to provide Adams with 5.25 hours of educational

8

training each day he was confined in SHU. Stated more broadly, the question was whether the prison administration's legitimate security and penological concerns had to yield to the provisions of Adams' IEP. The court held that they did not. In short, the court rejected the position advocated by Adams and adopted that advanced by the State. In no sense was Adams a "prevailing party" with regard to the basic legal issue presented to this court.

That Adams subsequently negotiated a new IEP with the State and secured a plan under which he would receive two years of compensatory education (which, following the entry of the Stipulated Order, the State had agreed to provide) does not transform him into a prevailing party. The dispute resolution mechanism envisioned by the IDEA calls for precisely that type of cooperative effort aimed at providing a free appropriate public education to a child in a manner that is acceptable to all concerned parties. Simply because Adams is satisfied with the product of that subsequent negotiation does not entitle him to attorneys' fees generated during the course of litigation in which he was, without any doubt, <u>not</u> the prevailing party.

Here, once the court intervened and removed the sole obstacle to a negotiated IEP — Adams' steadfast refusal to agree that his IEP must, under certain circumstances, yield when in conflict with legitimate prison security regulations — an agreed

9

resolution soon followed. In light of those circumstances, it would be entirely inappropriate to award Adams' the substantial fees which were generated in the course of litigating the issue: (1) which he interposed as the impediment to any negotiated resolution; and (2) with regard to which the State, and not he, ultimately prevailed. As the Court of Appeals for the Fourth Circuit has observed:

> While [the child] is free to resort to administrative and judicial action, he cannot expect to recover fees and costs when his efforts contributed nothing to the final resolution of a problem that could have been achieved without resort to administrative or legal process.
>
> Under these circumstances, it would be inappropriate for [the child] to recover attorneys' fees. Allowing such an award would encourage potential litigants and their attorneys to pursue legal claims prior to attempting a simpler resolution and would discourage the school from taking any action whatsoever, particularly any favorable change in a child's IEP, once an administrative proceeding or lawsuit was underway for fear that any action on its part would give rise to a claim by the plaintiff that he prevailed and that attorneys' fees are in order. We are not prepared to disorder the careful construct of the IDEA in this manner.

Combs, 15 F.3d at 364. See also Chad L. v. Manchester, No. 94-498-M, slip op. at 14-15 (D.N.H. July 20, 1995) ("sound discretion obviously militates against awarding fees where timely, nonadversarial, productive, and cost-effective means of exploring and deciding issues related to the best educational alternatives for a child are available, but have been shunned").

10

Like the situations presented in Combs and Chad L., this case is one in which it would be entirely inappropriate for Adams' to recover the substantial attorney's fees generated in the course of litigating his meritless efforts to have the State deliver his IEP without modification, notwithstanding its periodic conflict with legitimate security regulations and penological concerns. It is inconceivable that Congress intended federal courts to award attorney's fees to an individual who has created the sole obstacle to settlement, litigated and ultimately lost with regard to that issue (and, in the process, generated sizeable attorney's fees), and then, with that obstacle having been judicially removed, reached agreement on an appropriate educational plan in the usual course of discussion anticipated by the IDEA.

II. Two Years of Compensatory Education.

Adams readily concedes that he was not the prevailing party with regard to his claim concerning the delivery educational services while he was classified as a C-5 inmate or otherwise housed in SHU. Nevertheless, he claims that because this court did not "reverse" the hearing officer's conclusion that he was entitled to an additional two years of compensatory education (a point which was not addressed by the court, but which the State conceded in its settlement of this case), he is a "prevailing party," entitled to an award of attorneys' fees. Adams' victory on that front can be fairly described as comparatively de

11

minimis. To be sure, however, it did yield a tangible (if modest) result: because Adams' two years of compensatory education were periodically interrupted by his confinement in SHU, the State agreed to "reset the clock" and provide him with an additional two years of compensatory education.

It determining the overall reasonableness of Adams' request for attorney's fees, it is important to understand the context in which the State made its "concession" concerning the additional two years of compensatory education. It appears that the State only seriously contended that it had already delivered all of the educational services to which Adams was entitled <u>after</u> it became clear that Adams refused to yield on his demand for full implementation of his IEP even while he was in SHU, and after the hearing officer had ordered the State to deliver those services called for in the IEP, as written, regardless of Adams' confinement to the high security section. <u>See, e.g.</u>, Letter from Attorney Nancy Smith to Attorney Peter Smith, dated February 10, 1995. Prior to that, the State simply argued that Adams' IEP should be modified, so that it could be implemented in a reasonable way if he were again confined to SHU. <u>See, e.g.</u>, Pre-Hearing Order at 3 (February 8, 1994); State of New Hampshire's Proposed Findings of Fact and Conclusions of Law at 6 (dated 9/19/94). And, even after adopting the view (as an alternate theory of its case) that it had already delivered to Adams all the education that was required under the Settlement Order, the

State continued to focus primarily upon its claim that, while it was willing to continue to deliver educational services to Adams, his IEP had to be modified to account for his periodic confinement in SHU. Presented with what was a patently unreasonable demand from Adams, the State seems to have asserted the parrying view that his claims were moot because he was no longer entitled to any compensatory education. Viewed in context, the State's position was neither surprising nor unreasonable.

Adams was not a "prevailing party" because the settlement reached between the parties neither "materially altered" the nature of their legal relationship nor did it compel the State to modify its behavior in a way the directly benefitted Adams. See Farrar, 506 U.S. at 11; Texas Teachers' Assoc., 489 U.S. at 792-93. Adams obtained nothing in the parties' recent settlement agreement that he would not have obtained had he made a reasonable effort to resolve this situation amicably in 1993, rather than: (1) invoke the administrative remedies available under the IDEA; and (2) interpose what was undeniably an unreasonable condition of settlement (i.e., full implementation of an unmodified IEP while he was in SHU).

In the exercise of its discretion (and considering that but for Adams' steadfast refusal to yield on the main issue, on which the State did completely prevail, the parties could have and

13

likely would have negotiated an acceptable resolution to this matter long ago and as contemplated by the IDEA, with no need of administrative or other adjudicatory processes) the court holds that no award of attorneys' fees is appropriate in this case, and declines to award any amount.

## Conclusion

The legal issue presented in this matter was resolved in favor of the State and against Adams. Accordingly, the costs and fees in excess of $100,000 which were generated in the course of researching and advancing Adams' position on that issue are not recoverable under the IDEA. Simply because Adams <u>subsequently</u> negotiated a revised IEP with which he is now satisfied does not entitle him to recover the substantial sums which were expended in what was a meritless effort to force the State to subordinate its penological interests to his IEP as written, notwithstanding obvious conflicts with the prison's legitimate security and operational goals.[1] Those subsequent negotiations could have

---

[1] Effective June 4, 1997, Congress amended the provisions of the IDEA to make clear that, as this court previously held, the delivery of educational services under the IDEA must yield when it conflicts with a prison's legitimate security and penological concerns:

> If a child with a disability is convicted as an adult under State law and incarcerated in an adult prison, the child's IEP Team may modify the child's IEP or placement notwithstanding the requirements of sections 1412(a)(5)(A) of this title and 1414(d)(1)(A) of this title if the State has demonstrated a bona fide security or compelling penological interest that cannot otherwise be accommodated.

14

(and, indeed, probably should have) occurred without resort to administrative or judicial proceedings.

Adams' motion for attorneys' fees and costs (document no. 53) is denied.  The Clerk of the Court is instructed to close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 21, 1998

cc:   Nancy J. Smith, Esq.
      Peter S. Smith, Esq.
      H. Jonathan Meyer, Esq.
      Dean B. Eggert, Esq.

_____

20 U.S.C. § 1414(d)(6)(B).

15