Valentin QUINONES–PACHECO,
et al., Plaintiffs, Appellants,

v.

AMERICAN AIRLINES, INC.,
Defendant, Appellee.

Valentin QUINONES–PACHECO,
et al., Plaintiffs, Appellees,

v.

AMERICAN AIRLINES, INC.,
Defendant, Appellant.

Nos. 91–1930, 91–2030.

United States Court of Appeals,
First Circuit.

Submitted Sept. 16, 1992.

Decided Nov. 4, 1992.

Rafael Toro Cuberge, Yauco, P.R., on brief, for plaintiffs, appellants.

Ricardo F. Casellas and Fiddler, Gonzalez & Rodriguez, San Juan, P.R., on brief, for defendant, appellee.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.

SELYA, Circuit Judge.

In this tort action, the unsuccessful plaintiffs, Valentin Quinones–Pacheco (Quinones) and his wife, Rita Fernandez de Quinones (Fernandez), appeal from the entry of a judgment in the defendant's favor. The prevailing defendant, American Airlines, Inc. (American), also appeals. American contends that the district court erred in failing to order the plaintiffs to pay its counsel fees. Having carefully considered all aspects of the matter, we reject both appeals.

## I. BACKGROUND

On January 20, 1990, as Quinones' tour of military duty wound down, the plaintiffs were en route to Puerto Rico aboard American's Flight 689. During the flight, the aircraft encountered severe turbulence. The plaintiffs were thrown about and claim to have sustained injuries. They did not immediately seek medical treatment, presumably because, according to what Quinones said at the time, they were not injured.

Five days later, both plaintiffs saw Dr. Marin. There is no indication in the record that Fernandez required follow-up care. Indeed, she began work that year as a seamstress in a local factory while simultaneously caring for two young daughters. Although the details are sketchy and the record unilluminating, Quinones apparently continued treatment with Dr. Marin for some indeterminable period.

Quinones was mustered out of the military on schedule. In March of 1990, he sought to reenlist. He told the Army recruiter that he suffered from back problems. He claims that the recruiter immediately and unqualifiedly rejected his reenlistment application. There is no evidence that Quinones, who holds a college degree in social work, attempted to find other employment. In November 1990, a CT–scan showed a ruptured lumbar disc.

On January 15, 1991, the plaintiffs sued American in the United States District Court for the District of Puerto Rico.[1]

---

**1.** This is a diversity case brought pursuant to 28 U.S.C. § 1332 (1988). Puerto Rico law controls.

They sought $2,700,000 in damages, alleging that the bumpy ride and the airline's failure to warn passengers of impending turbulence caused personal injuries, emotional distress, and loss of income. On February 12, 1991, Quinones was seen by a neurologist, Dr. Reinaldo Carreras Casilla (Carreras). Although Dr. Carreras took no history, he diagnosed Quinones' injury as a lumbar herniated disc secondary to the in-flight trauma. The doctor stated that Quinones could not perform work requiring strenuous activity, heavy lifting, frequent stooping, or the like.

Dr. Carreras examined Fernandez in March of 1991. He did not inquire about her current work status. Although neurological tests and X-rays were within normal limits, Dr. Carreras made a diagnosis of cervical myositis (muscle inflammation in the neck). He ordered Fernandez to rest. She disobeyed his instructions and kept working.

## II. PROCEEDINGS BELOW

The district court bifurcated the trial. At the end of the initial phase, the jury found the defendant negligent. During the bifurcated trial's second phase,[2] the jury heard testimony from, *inter alia*, the plaintiffs, Dr. Carreras, and two Army recruiters. The jury also heard the testimony of Dr. Orlando Fernandez–Lugo, who examined both plaintiffs on American's behalf. Dr. Fernandez–Lugo agreed that Quinones had a herniated lumbar disc, but he offered no opinion on whether the condition was a result of in-flight trauma. He also testified that this particular type of herniation does not normally produce significant pain, cause limited mobility, or restrict a person's activities.

Dr. Fernandez–Lugo's examination of his namesake was even less comforting to the plaintiffs' cause. He was wholly unable to corroborate Fernandez's claimed disorders and concluded that her "injuries" were likely a fabrication "for secondary gain."

On this conflicted record, the jury, responding to special interrogatories, found that the plaintiffs (who had not been wearing seat belts) were forty percent negligent and, in any event, had sustained no damages in consequence of defendant's negligence. The court entered judgment for American. Following the denial of two post-trial motions—plaintiffs' motion for new trial and defendant's motion for attorneys' fees—these appeals eventuated.

## III. THE PLAINTIFFS' APPEAL

The plaintiffs' importunings are twofold. They contend, first, that the lower court erred in refusing to order a new trial because the take-nothing verdict was contrary to the great weight of the credible evidence. They also contend that the court blundered in excluding the testimony of an expert witness. We consider these points *seriatim*.

### A. The New Trial Motion.

The plaintiffs argue here, as they argued below, that there was no legitimate basis for a verdict of zero damages and that, therefore, the district court erred in denying the plaintiffs' timely motion for a new trial. We review a district court's order granting or denying a new trial for abuse of discretion. *See Browning Ferris, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279, 109 S.Ct. 2909, 2922, 106 L.Ed.2d 219 (1989); *Putnam Resources v. Pateman*, 958 F.2d 448, 459 (1st Cir.1992); *Hendricks & Assoc., Inc. v. Daewoo Corp.*, 923 F.2d 209, 217 (1st Cir.1991).

In the federal system, a trial judge does not sit as a super-juror, free to disregard the considered verdict of a properly instructed jury "merely because he disagrees with it or would have found otherwise in a bench trial." *Milone v. Moceri Family, Inc.*, 847 F.2d 35, 37 (1st Cir.1988). Rather, the judge may insist upon a new trial only in those few instances where he supportably concludes that the verdict, if allowed to stand, will work a miscarriage

**2.** The plaintiffs' cases were consolidated for trial with a number of similar suits brought by fellow passengers. The claims of eight such passengers were tried together in the second (damage) phase of the bifurcated trial.

of justice. *See Putnam Resources*, 958 F.2d at 459; *Milone*, 847 F.2d at 37; *Wagenmann v. Adams*, 829 F.2d 196, 200–01 (1st Cir.1987). In general, this rule applies to a verdict premised on a finding that no damages have been satisfactorily proven. When evidence of damage is equivocal, or a reasonable jury could determine that the plaintiff failed to prove an essential element of his or her case (such as causation), returning a "zero damages" verdict is acceptable and the non-award will be set aside only if manifest injustice is in prospect. *See Ruiz–Rodriguez v. Colberg–Comas*, 882 F.2d 15, 17 (1st Cir.1989).

■ 1. *Presumed Damages.* The plaintiffs' initial foray goes nowhere. They assert that, under Puerto Rico law, once negligence is established, damages follow as a matter of course. They are wrong. Notwithstanding a finding of negligence, a plaintiff retains the burden of proving causation and damages by a preponderance of the evidence.[3] *See Soc. de Gananciales v. G. Padin Co.*, 117 P.R. Dec. 94, 106 (1986); *Hernandez v. Fournier*, 80 P.R.R. 94, 97 (1957). We turn, then, to plaintiffs' broader "weight-of-the-evidence" argument.

■ 2. *Fernandez's Case.* After scouring the trial transcript, we conclude that the jury's resolution of Fernandez's case was well within its proper province. A thoughtful jury, given the incomplete and equivocal nature of the evidence and the dubious provenance of the claim, could plausibly have found that Fernandez did not suffer any compensable injuries. In this regard, the jury was free to consider,

*inter alia*, the following: the spontaneous utterance that the plaintiffs were not injured; the fact that, apart from an initial checkup five days after the accident, there was no proof that Fernandez sought medical attention for over a year; Fernandez's ability to carry out an operose work schedule after the mishap; her disregard of Dr. Carreras' instructions to quit work; and Dr. Fernandez–Lugo's powerful testimony.[4] Focusing on these, and other, pieces of evidence, and making permissible credibility judgments, rational jurors could well have determined that Fernandez was not injured during the flight. Jurors, after all, are not expected either to close their eyes to that which is perfectly plain or close their minds to that which is easily inferable. *See Putnam Resources*, 958 F.2d at 460 ("The law is not so struthious as to require that a jury ignore inferences which it reasonably finds are obvious.").

■ 3. *quinones' Case.* Quinones' case is a much closer call. On the one hand, he was treated by Dr. Martin shortly after the accident and apparently underwent some follow-up care (at least to the extent of X-rays on January 29, 1990 and a CT–scan on November 19, 1990). Moreover, Dr. Carreras corroborated his claims to a considerable extent. On the other hand, Dr. Marin did not testify; the X-rays were negative; Dr. Carreras reported Quinones' neurological examination as normal and described his injury as a "mild case"; Dr. Fernandez–Lugo reported that Quinones' impairment was "very small" and that his movements were not restricted in any significant way; and Quinones did not

---

3. In any event, this theory of Puerto Rico law was incorporated into the jury instructions, to which no objection was preserved. The theory is, therefore, the law of the case for purposes of this appeal. *See La Amiga del Pueblo, Inc. v. Robles*, 937 F.2d 689, 690–91 (1st Cir.1991); *Milone*, 847 F.2d at 38–39; *see also United States v. Gomes*, 969 F.2d 1290, 1294 (1st Cir.1992); *see generally* Fed.R.Civ.P. 51.

4. In regard to Fernandez, Dr. Fernandez–Lugo's testimony was doubly damning. First, he found no evidence of injury and, thus, effectively rebutted Dr. Carreras' testimony. Second, Dr. Fernandez–Lugo convincingly challenged the bona fides of the claimant's case. He testified

that Fernandez arrived at the examination wearing a shoulder brace (not the neck brace that Dr. Carreras prescribed). She was extremely uncooperative throughout the examination, refusing to move or bend because of the pain allegedly involved in doing so and crying out whenever she was touched. The physician testified that he found this behavior bizarre given the claimant's ability to perform her factory job, care for her children, and manage her household chores. In conclusion, Dr. Fernandez–Lugo expressed his belief that Fernandez's "injuries" were likely a fabrication "for secondary gain," that is, an attempt to strike it rich through a tort suit.

prove any "special damages," *e.g.*, medical expenses or loss of earnings.

This evidentiary flux and reflux must be viewed against the backdrop of the charge. The district court instructed the jury, *inter alia,* that Quinones had the burden to prove damages by a preponderance of the evidence; that "the amount of damages ... must be proven with reasonable certainty and accuracy without resorting to speculation or emotion"; and that pain and suffering, to be compensable, must be "substantial," that is, a "serious suffering ... and not a mere passing affliction." The court also instructed the jury on the plaintiff's burden to prove a causal connection between the negligent act and the claimed injuries. Quinones did not object to the instructions which, therefore, became the law of the case. *See supra* note 3 and cases cited therein. Given the jury instructions and the mixed signals sent by the proof, we think that a rational jury could have concluded that Quinones sustained no compensable injury during, or as a result of, the incident of January 20, 1990.

■ The most formidable obstacle to such a conclusion is the fact that the CT-scan showed an objectively verifiable injury (a herniated lumbar disc) and that Dr. Carreras, at least, thought this injury was likely secondary to the in-flight trauma. The jury, however, was under no compulsion to accept Dr. Carreras' opinion on causation and could rationally have believed that Quinones failed to carry the burden of proof on that element of his case. The rule is well settled that expert opinion testimony, even if not directly contradicted, is not ordinarily binding on a jury. *See Gregg v. U.S. Indus., Inc.,* 887 F.2d 1462, 1470 (11th Cir.1989); *Dickerson v. Amax, Inc.,* 739 F.2d 270, 273–74 (7th Cir.1984); *Mopkins v. St. Louis Die Casting Corp.,* 569 F.2d 454, 455 (8th Cir.1978); *Mims v. United States,* 375 F.2d 135, 140 & n. 2 (5th Cir.1967) (collecting cases); *Jones v. N.V. Nederlandsch–Ameri–Kaansche, etc.,* 374 F.2d 189, 190 (3d Cir.1966), *cert. denied,* 388 U.S. 911, 87 S.Ct. 2114, 18 L.Ed.2d 1349 (1967). The rule is particularly apropos in a case where the expert's testimony, read in the larger context of the evidence as a whole, lacks great convictive force.

This is such a case. Here, the physician's opinion on causation had no fewer than four major weaknesses. For one thing, Dr. Carreras' opinion was no more than a naked conclusion; the doctor did not explain his opinion or underbrace it in any meaningful way. For another thing, he did not see Quinones for over a year after the accident. Even then, he failed to record Quinones' prior medical history. Therefore, Dr. Carreras never eliminated the possibility that the disc injury, rather than occurring in consequence of the flight, predated or postdated it. This is especially significant since the first concrete evidence of a herniated disc was the CT–scan, taken some ten months after the mishap, with no coherent explanation of what had (or had not) happened during the intervening period. In the third place, Dr. Fernandez–Lugo testified that (a) disc injuries occur spontaneously among a significant percentage of men in Quinones' age group and (b) somewhere between twenty and fifty percent of asymptomatic males in that age group have lumbar disc pathology. Finally, Quinones himself stated, immediately after the accident, that he was not hurt. There were, then, myriad possibilities from which the jurors could choose. *Cf. Wilder v. Eberhart,* 977 F.2d 673, 676–77 (1st Cir. 1992) (holding that the district court should have allowed defendant's expert to testify about "possible" causes of plaintiff's injury because such testimony could counter plaintiff's expert's opinion about a "probable" cause). No more was exigible to ground a take-nothing verdict.

In their deliberations, jurors are permitted to draw reasonable inferences from the evidence and to assess the credibility of witnesses, including expert witnesses. Jurors are not only permitted, but expected, to use their common sense and to apply everyday knowledge to the facts. We believe that, in this case, the evidence as a whole rationally supported a conclusion that Quinones, who had the devoir of persuasion, failed to prove that the herniated disc was proximately caused by American's negligence. *See, e.g., Peckham v. Conti-*

*nental Cas. Ins. Co.*, 895 F.2d 830, 836–37 (1st Cir.1990) (observing that causation questions are ordinarily for the jury); *Marshall v. Perez–Arzuaga*, 828 F.2d 845, 850–51 & n. 8 (1st Cir.1987) (similar; applying Puerto Rico law), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988). After all, on the appellate level, "we cannot reject possibilities rooted in the record merely because, if sitting as factfinders, we would likely have drawn a different set of conclusions." *Peckham*, 895 F.2d at 839.

We need go no further. Having in mind the serious deficiencies in Quinones' testimony and case presentation, the evidence minimizing any injury that he may have sustained, the plaintiffs' failure to request an instruction on nominal damages, the evidence of other possible causes of injury, and the allocation of the burden of proof, we cannot say that the "zero damages" verdict was so farfetched as to require the court's intervention.

4. *Recapitulation.* The plaintiffs had the burden of proving both proximate cause and damages by a fair preponderance of the credible evidence. The jury found, in effect, that the plaintiffs failed in this endeavor. The trial judge, schooled in the factual intricacies of the case, wrote that he would not "second guess the jury" because the jurors "had ample evidence from which they could find as they did." Although we, if sitting in direct judgement on the facts, might have awarded some damages, we are not persuaded that the trial court's ruling was beyond the scope of its discretion, that the evidence was totally one-sided, or that the take-nothing verdict worked a miscarriage of justice. The court below did not commit reversible error in refusing to order a new trial.

B. Exclusion of Expert Testimony.

■ At trial, the plaintiffs sought to present the testimony of Mario Puchi, an economist, to establish the extent of Qui-

nones' past and future loss of earnings. Expert testimony is, of course, admissible on such an issue. *See* 22 Am.Jur.2d, *Damages* § 973 (1988). In this instance, however, the trial judge, after reading Puchi's report (which contained the substance of his expected testimony) granted the defendant's motion *in limine* and barred the testimony because an inadequate foundation had been laid. Quinones assigns error to this ruling.

■ The district courts enjoy great latitude in respect to the admission or exclusion of expert testimony. *See, e.g., Allied Int'l, Inc. v. Int'l Longshoremen's Ass'n, Inc.*, 814 F.2d 32, 40 (1st Cir.), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987); *Payton v. Abbott Labs*, 780 F.2d 147, 155 (1st Cir.1985). We review rulings admitting or excluding proffered testimony of expert witnesses only for misuse of this wide discretion. *See Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169, 1173 (1st Cir.1992); *Allied Int'l*, 814 F.2d at 40. We discern no abuse of discretion here.

The cornerstone of Puchi's analysis was the assumption that Quinones, intending to reenlist in the Army and remain there until he was eligible to retire on a military pension, was precluded from doing so due to his back injury. On that assumption, Puchi determined the amount of wages and benefits that Quinones theoretically would have lost as a result of being denied reenlistment.[5] Because Puchi's analysis was predicated on an assumption not supported by the record—the assumption that Quinones suffered from a permanent, total disability—the district court did not err in excluding the proffer. We explain briefly.

■ In tort actions, loss of earning capacity is an economic concept based upon a medical foundation. A plaintiff has the burden of proving his claimed loss of earning capacity. To do so, he must offer evidence from which a jury may reasonably

---

**5.** Puchi calculated the wages that Quinones would have earned had he served twenty years and retired on an Army pension. In so doing, he assumed that military wages would increase over time and estimated the value of various

associated benefits (*e.g.*, subsidized housing, private school tuition). Puchi then discounted his calculations to reflect present value. On this basis, he concluded that Quinones suffered a loss of $531,607.93.

determine the annualized stream of income that the plaintiff, uninjured, would probably have earned, and contrast it, over the period of proven disability, to a similar forecast of what the injured plaintiff's earnings are likely to be. *See Rodriguez v. Ponce Cement Co.*, 98 P.R.R. 196, 213 (1969); *see also Glasscock v. Armstrong Cork Co.*, 946 F.2d 1085, 1091 (5th Cir. 1991) ("Recovery of damages for loss of earning capacity compensates a plaintiff for the difference between the income he could earn before his injury and the income he could earn after the injury."), *cert. denied*, —— U.S. ——, 112 S.Ct. 1778, 118 L.Ed.2d 435 (1992). Here, Quinones sought to present a skewed version of this classic formulation. His proffer assumed that his injuries were permanent and that his disability was total—but the proof substantiated neither boast.

The record is utterly barren of any evidence that Quinones was totally disabled. Although there was some evidence that he could not perform certain tasks, *i.e.*, that he was partially disabled, there was no probative evidence that his condition prohibited him from engaging in all gainful employment. Moreover, there was no medical evidence discussing the duration of Quinones' incapacity or suggesting that it was permanent.[6] Without such information, we agree with the trial judge that there was an insufficient foundation for the economist's testimony. Absent evidence of the extent and likely duration of a plaintiff's claimed disability, what other work he can perform betimes, and what he can earn in such pursuits, a trial court may appropriately exclude evidence of the losses stemming from the plaintiff's alleged inability to do a particular job.[7] *See Rodriguez*, 98 P.R.R. at 213; *see also Baker v. Kroger Co.*, 784 F.2d 1172, 1175–76 (4th Cir.1986) (holding that, where no adequate foundation had been laid, the district court erred in allowing experts' projections about plaintiff's loss of future earnings to be introduced into evidence).

## IV. THE DEFENDANT'S APPEAL

We need not tarry over the defendant's appeal. American relies on Puerto Rico law which, in substance, allows counsel fees to be shifted in cases of demonstrated obstinacy, that is, when a litigant has been "unreasonably adamant or stubbornly litigious, beyond acceptable demands of the litigation." *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 126 (1st Cir.1991).[8] The trial court has considerable leeway in deciding whether to award fees for obstinacy. *See Marshall*, 828 F.2d at 852. We review the district court's decision to grant or withhold such an award under an abuse of discretion rubric. *See Sainz Gonzalez v. Banco de Santander*, 932 F.2d 999, 1004 (1st Cir.1991); *De Leon Lopez*, 931 F.2d at 127.

Determining whether or not to shift fees under Rule 44.1(d) involves a judgment call. We are aware of no case arising under Puerto Rico Rule 44.1(d) in which we have reversed a district court's determination to

---

6. The only evidence on the point tended to show the contrary, as Dr. Fernandez–Lugo testified that more than ninety percent of all herniated discs heal spontaneously over time.

7. It is also problematic whether the record fairly supported Quinones' claim that he was denied the opportunity to reenlist because of his back injury. To be sure, Quinones himself testified that his overtures had been rejected because of his back injury. But, the record makes manifest that this conclusion was no more than the sheerest of speculation. The Army's records did not bear out the assumption, the trial testimony of two Army recruiters did not bridge the gap, and, under the applicable military regulations, a lay recruiter would have had no right to treat the ruptured disc, even if it had then been diagnosed, as a disqualifying defect. *See* Army Regs. 601–210, §§ 3(a)(2), 3(a)(9), 5(a)(2)(e).

8. The Puerto Rico Rules provide in pertinent part:

   In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct.

   P.R.Laws Ann. tit. 32, App. III, Rule 44.1(d) (1988 Supp). When Puerto Rico law supplies the basis for decision in a diversity case, the federal courts must apply Rule 44.1(d). *See De Leon Lopez*, 931 F.2d at 126; *Pan American World Airways, Inc. v. Ramos*, 357 F.2d 341, 342 (1st Cir.1966).

eschew a fee award, and American has cited us to none. This is as it should be: since the trial judge has seen the litigation unfold and can best appreciate its nuances, an appellate court must be exceedingly slow to second-guess the presider's appraisal of so interstitial a matter.

This case presents no exception to the general rule. Although the plaintiffs did not succeed below, we think that the district court could plausibly have concluded that their litigating positions were not chimerical and that their tactics did not unnecessarily prolong the hostilities. Consequently, the court below did not abuse its discretion in withholding a fee award.[9]

*Affirmed. All parties shall bear their own costs.*

---

9. Citing Fed.R.App.P. 38, American also invites us to sanction the plaintiffs for prosecuting a frivolous appeal. We decline the invitation. In regard to Quinones, the appeal presented a close question. Fernandez's arguments on appeal, while considerably less robust, were no more susceptible to facile disposition than were American's arguments in support of its cross-appeal. The lemon should not be allowed to reap a reward for calling the grapefruit sour.