Manchester Mfg v. Dylex Ltd          CV-91-752-SD  01/04/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Manchester Manufacturing
 Acquisitions, Inc.;
Gary A. Dinco;
Felix J. Weingart, Jr.

        v.                                    Civil No. 91-752-SD

Dylex Limited;
Dylex (Nederland) B.V.;
293483 Ontario Ltd.;
Harold R. Levy;
Mac Gunner
Estate of Kenneth Axelrod


O R D E R

    This order addresses the issues raised by certain post-trial

motions filed upon conclusion of fourteen days of a hotly

contested jury trial.


1.  Background

    In December 1988 the plaintiffs, Manchester Manufacturing

Acquisitions, Inc. (Acquisitions), Gary A. Dinco, and Felix J.

Weingart, Jr., purchased a distribution warehouse business

located in Colebrook, New Hampshire.  Known as Manchester

Manufacturing, Inc. (MMI), that business had originally been

founded as a joint venture among Sears, Roebuck & Company (Sears), Dylex Limited, and 293483 Ontario Limited to manufacture clothing for Sears.

MMI subsequently became a distribution center for Sears, employing plaintiff Dinco as plant manager and plaintiff Weingart as financial comptroller. Acquisitions, a corporation of which Dinco and Weingart are co-owners and officers, was founded to aid in their purchase of MMI.

Plaintiffs claimed that, in connection with the December 1988 sale of MMI to them, certain representations were made to the effect that the Sears distribution business with MMI would continue at the same level as existed at the time of the sale. Shortly after completion of the sale, however, Sears decreased and, by the end of 1989, terminated its distribution business with MMI. The business volume and profits of MMI dropped drastically, and in November 1990 First NH Bank, provider of the funds obtained by Acquisitions to purchase MMI, foreclosed on its loan.

Plaintiffs then commenced this lawsuit against Sears, Dylex Limited, Dylex (Nederland) B.V., 293483 Ontario Limited, Harold

2

Levy, Mac Gunner, and Kenneth Axelrod,[1] alleging that said

defendants violated federal and state securities laws and made

fraudulent and/or negligent misrepresentations to plaintiffs in

connection with the sale to plaintiffs of MMI.

Eventually, the case came to trial against all defendants

but Sears.[2]  The jury, by medium of special verdicts, absolved

defendant Levy, but found against the remaining defendants.  A

verdict for plaintiffs of $2,385,000 was returned on a count of

violation of the "Blue-Sky" Law of New Hampshire, New Hampshire

Revised Statutes Annotated (RSA) 421-B:3.[3]  A verdict of $523,500

---

[1]Defendants Levy, Gunner, and Axelrod had long been associated in Canada in the business of clothing manufacturing. They oversaw the operations of MMI, and they formed 293483 Ontario Limited to hold their shares of MMI stock.

[2]Sears settled with plaintiffs prior to trial for the sum of $750,000.  Over the defendants' objection, the court approved this settlement on October 19, 1995.

[3]RSA 421-B:3 provides:

> **Sales and Purchases**.  It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:
>     I.  To employ any device, scheme, or artifice to defraud;
>     II. To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

3

for plaintiffs was returned on a claim of fraudulent misrepresentation.

## 2. Defendants' Motion for Judgment as a Matter of Law, document 185

Defendants move for judgment as a matter of law.  Rule 50(b), Fed. R. Civ. P.[4]  The plaintiffs object.  Document 189.

---

> III.  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

[4]Replacing the earlier motion for directed verdict, Rule 50(b) provides:

> Whenever a motion for judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.  Such a motion may be renewed by service and filing not later than 10 days after entry of judgment.  A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative.  If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law. . . .

4

A motion for judgment as a matter of law may be granted only if upon examination of the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant the court determines that the evidence would lead a reasonable person to only one conclusion, favorable to the movant. <u>Aetna Cas. Surety Co. v. P&B Auto Body</u>, 43 F.3d 1546, 1556 (1st Cir. 1994) (internal quotations and citations omitted). Viewed through such legal prism, it is clear that defendants are not entitled to the relief here sought.

Defendants seek to exclude from consideration certain proceedings among the parties which took place prior to plaintiff's entry into actual negotiations for the purchase of MMI. But such proceedings were relevant to the issues of fact to be decided by the jury. They include a January 1988 meeting among Dinco, Weingart, and defendant Levy in person, joined by telephone conference call from defendant Gunner. In the course of such meeting, defendants represented to plaintiffs that Sears' business would continue as usual in the future and that the reasons for a sale of MMI related only to a Sears policy concerning divestiture of warehouse ownership and a desire of the individual defendants to retire.

5

In February of 1988 plaintiffs attended a meeting with M. Hill of Sears and the business brokers hired by the defendants to sell MMI. On query of Hill by the brokers with respect to future business, the response was that Sears' policy barred the giving of written guarantees of business, but that in Hill's experience, Sears' business post-divestiture had in every instance remained the same or increased.

In May of 1988 plaintiffs met with Hill, the business brokers, and one B. Elias, a prospective purchaser of MMI. In response to inquiry from Elias, Hill made practically the same response concerning the refusal of written guarantees and the continuation of Sears' business.

There was also evidence that at the May 1988 meeting the individual defendants represented to the plaintiffs that Sears' business with MMI would continue as usual and that they would support the plaintiffs in every way necessary to acquire the business. Later in the course of that same meeting, the business brokers, as agents of the defendants, revealed to plaintiffs a "confidential business profile" which contained representations concerning the stabilization of Sears-MMI's business at $1.7 million annually.

In June 1988 the individual plaintiffs reported to the board of directors of MMI with information that plaintiffs had received concerning Sears Departments 640 and 677. Sears' representative to the MMI board advised members of the board that plaintiffs had not been told the truth concerning such information. The board did not disclose such truth to plaintiffs, but advised plaintiffs to travel to Chicago in an attempt to procure other business from Sears.

As so directed, plaintiffs went to Chicago in July 1988 to talk with the buyers for other Sears departments. They returned with an optimistic feeling about new business, but were unaware that the business brokers had told Hill of the necessity for Sears to make plaintiffs feel comfortable about future business if the sale to plaintiffs was to take place.

In August 1988 defendant Gunner advised plaintiffs that Sears had rejected plaintiffs' request for a volume business guarantee because of a "policy" of Sears which prevented such guarantees. Yet in October 1987, in the presence of Hill, one Israel Madew, a prospective purchaser of MMI, had requested a written guarantee of a volume of business over a defined period of time. Madew had been advised that Sears would give only a limited guarantee for one year and assure some business for a

second year.  This offer contradicted the purported policy of "no written guarantees".

Other evidence that Sears intended, prior to the sale of MMI, to decrease or terminate further business occurred in the course of Hill's meeting in September 1988 with plaintiffs' banker.  Hill once more repeated his statements concerning no written guarantees, coupled with an optimistic future business forecast.  This scenario was also repeated at the time of the closing of the sale in December of 1988.

The foregoing summary of certain of the evidence presented at trial satisfies this court that the jury could find that defendants misrepresented and failed to disclose material facts to the plaintiffs.  Moreover, instructed as they were on the eight factors outlined in Kennedy v. Josephthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987), the jury could find that defendants' reliance on the representations made was reasonable. Jackvony v. RIHT Fin. Corp., 873 F.2d 411, 416 (1st Cir. 1989).

Defendants' reliance on the Master Distribution Agreement (Plaintiffs' Exhibit 17) is misplaced.  That document fails to address business volume, either by its terms or within the annually executed schedules.  In contrast, significant evidence is found in the Stock Purchase Agreement (Plaintiffs' Exhibit

179) and its section 3.4 requirements as to survival of representations and warranties.  See Astor Chauffeured Limousine Co. v. Runnfeldt Investor Corp., 910 F.2d 1540, 1545-46 (7th Cir. 1990).

And the stress placed by defendants on the testimony of their experts is an equally weak reed on which to lean.  "The rule is well settled that expert opinion testimony, even if not directly contradicted, is not ordinarily binding on a jury." Quinones-Pacheco v. American Airlines, Inc., 979 F.2d 1, 5 (1st Cir. 1992).

From what has been written to this point, it is clear that the evidence presented at the trial of this case was more than sufficient for the jury to find, as it did, that plaintiffs were entitled to verdicts.  The motion for judgment as a matter of law is denied.

2.  Defendants' Motion for New Trial, document 184

Alternatively, defendants have moved for a new trial.  Rule 59, Fed. R. Civ. P.  Plaintiffs object to this relief.  Document 189.

A new trial may be ordered "only in those few instances where [the trial judge] supportably concludes that the verdict,

if allowed to stand, will work a miscarriage of justice." Quinones-Pacheco, supra, 979 F.2d at 3, 4 (citations omitted). The instant case does not fall within the parameters of this rule.

The court's outline of relevant evidence set forth earlier in the course of this order serves to rebut defendants' claim that the verdicts were against the clear weight of the evidence. Nor is there any merit to defendants' challenge to the expert testimony of plaintiffs' witness Mark McKinsey. In the course of its (32-page) October 19, 1995, ruling on pretrial motions, the court collected the relevant authority concerning the admissibility of expert testimony. Document 148, at 25, 26. Pointing out the "case-specific inquiry" to be made in such circumstances, the court deferred ruling on the testimony of McKinsey until trial, where it would be subject to direct and cross examination, followed, if necessary, by a motion to strike. Id. at 26-27.

When presented, the testimony of McKinsey demonstrated his possession of specialized knowledge, not only as to the workings of corporate boards of directors, but also as to warehousing and distribution. His opinions clearly encompassed issues that were without the sphere of knowledge of lay jurors, and in each

instance were stated to be based upon a reasonable degree of certainty arrived at from his experience and education in the field of corporate management and affairs. Such evidence was not speculative and was properly admitted.

Defendants complain on hearsay grounds that the court erred in admitting certain handwritten notes of Suzanne Mayo, a Sears employee. Plaintiffs' Exhibit 72. This argument overlooks the testimony of Mayo and other witnesses in support of admissibility.

The alleged notes were made either contemporaneously with a November 5, 1987, meeting of certain distribution personnel of Sears or in preparation for a follow-up November 10, 1987, memorandum of that meeting which Mayo prepared for her superior, Mr. Stafford. Plaintiffs' Exhibit 74. They concerned the (previously described in this order) desire of Israel Madew to procure assurances that MMI would continue to receive business from Sears. Stafford's handwritten notes of the same meeting recite facts similar to those contained in the Mayo notes. Plaintiffs' Exhibit 73.

At a December 2, 1987, meeting of the MMI board of directors, attended by Sears personnel who had been present at the November 5, 1987, meeting, the Madew option was discussed and

11

made known to the defendants. The Mayo notes were admissible at trial as admissions of a party's agent or servant within the scope of their agency or employment, Rule 801(d)(2)(D), Fed. R. Evid., or within the co-conspirator exception of Rule 801(d)(2)(E), Fed. R. Evid.

Defendants also object to the exclusion of testimony from defendants Gunner and Levy as to statements made by the deceased defendant Kenneth Axelrod to plaintiffs in the course of the May 1988 meeting. Defendants proffered such hearsay, not for its truth, but as it bears on plaintiffs' state of mind. The proffered testimony concerned alleged warnings by Axelrod to plaintiffs to the effect that plaintiffs should not purchase MMI.

Such testimony, however, would add nothing to what plaintiffs Dinco and Weingart themselves described as the statements made to them by Axelrod. The plaintiffs testified that Axelrod told them that, given their leveraged financing, the business would be a tough nut to crack and that Axelrod hoped that plaintiffs knew what they were getting into. On both direct and cross examination, plaintiffs explained the effect of these statements on their state of mind, detailing their understanding of how difficult their lives would be as owners rather than mere employees of MMI.

12

Defendants also proffered the testimony of Alan Axelrod, a Canadian lawyer who is the nephew and executor of the estate of Kenneth Axelrod. This proffer was as to statements made by Kenneth Axelrod to Alan Axelrod after the complaint in this action had been served on Kenneth Axelrod. Hospitalized at the time, Kenneth Axelrod allegedly told Alan Axelrod that he warned plaintiffs against the purchase of MMI as it was a highly leveraged transaction which plaintiffs might not be able to handle if there were a downturn in business. Although Kenneth Axelrod allegedly also expressed at this time a desire to confer with his trial counsel, Attorney Kantor, no efforts were made to preserve his testimony in the ensuing two months of the life of Kenneth Axelrod.

When plaintiffs moved pre-trial to exclude any such testimony from Alan Axelrod, the court deferred the matter until trial. Document 148, at 18-21. At trial, voir dire of Alan Axelrod was held without the presence of the jury. At its conclusion, the court ruled that the proffered testimony did not meet the requirement of trustworthiness (document 148, at 20-21) and barred its presentation to the jury. The court is satisfied that it did not err in so ruling.

Applicable at the time of trial, Local Rule 10[5] required, inter alia, the setting of discovery deadlines. Rule 26(2)(A) through (C), Fed. R. Civ. P., governs the requirement of disclosure of experts. In violation of the provisions of these rules, defendants sought to adduce testimony concerning a certain real estate appraisal made by one Stafford Young.[6]

Objecting to this procedure, plaintiffs moved in limine to bar such evidence, and the court granted the motion to the extent that defendants were barred from introducing evidence as to the amount of the appraisal. Document 148, at 28-30. The court did permit the introduction of evidence that there had been an appraisal of the property. Id.

Unhappy with such ruling, defendants then tried to coax the proposed testimony of Young into the "lay witness" category of Rule 701, Fed. R. Evid. Finding this approach to be akin to the futile efforts of Cinderella's sisters to wear the glass slipper, the court rejected this argument.

---

[5]As of January 1, 1996, brand-new local rules have supplanted those which were extant as of the time of the trial of this action.

[6]Defendants did not disclose prior to the expiration of discovery deadlines any intent to call Stafford Young as an expert witness. Plaintiffs claimed that had such timely disclosure been made, they were prepared to counter any such testimony with their own expert.

The wide latitude of the trial court in formulating pretrial orders and sanctioning parties who fail to comply with procedural rules, <u>Atlas Truck Leasing, Inc. v. First NH Banks, Inc.</u>, 808 F.2d 902, 903 (1st Cir. 1987), includes expert witnesses, <u>Duford v. Sears, Roebuck & Co.</u>, 833 F.2d 407, 413 (1st Cir. 1987), and is here applicable. The exclusion of the appraisal evidence was not error.

The motion for new trial is denied.

## 3. Defendants' Motion to Alter or Amend Judgment, document 186

Claiming the jury verdicts to be excessive and duplicative, defendants move to alter or amend the judgments. Rule 59(e), Fed. R. Civ. P.[7] The plaintiffs object. Document 190.

A motion filed under Rule 59(e), Fed. R. Civ. P., must either clearly establish a manifest error of law or must present newly discovered evidence, but it may not be used to argue a new legal theory. <u>Jorge Rivera Surillo v. Falconer Glass Indus.</u>, 37

---

[7]Rule 59(e), Fed. R. Civ. P., permits the service of a motion to alter or amend the judgment not later than 10 days after entry of the judgment. The filing herein is timely, although the court has since vacated the judgment originally entered to allow for further proceedings concerning attorney fees.

F.3d 25, 29 (1st Cir. 1994) (citing and quoting FDIC v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992)).

Initially, defendants argue that the $2,385,000 verdict on the "Blue-Sky Law" count is duplicable of the $523,500 verdict returned on the common-law fraudulent misrepresentation count. Generally, however, remedies provided under Blue-Sky laws are in addition to other remedies, including common-law claims. 69A Am. Jur. 2d *Securities Regulation--State* § 212, at 248 (Lawyer's Coop. Pub. 1993). In addition, the New Hampshire Blue-Sky statute specifically provides that its "rights and remedies . . . are in addition to any other right or remedy that may exist at law or in equity . . . ." RSA 421-B:25, XI.

Accordingly, the court finds that this case does not concern multiple recoveries of the type criticized by the courts in Phillips v. Veraz Corp., 138 N.H. 240, 637 A.2d 906 (1994), and Dopp v. HTP Corp., 947 F.2d 506 (1st Cir. 1991). The verdicts which have been returned in this litigation are not duplicative.

Defendants next challenge the verdict on the "Blue-Sky" count as excessive. They suggest that the jury necessarily failed to consider and deduct certain elements which were not properly includable as damages. They also point out that the

offset for the settlement between plaintiffs and Sears must be deducted prior to the computation of any interest.

Plaintiffs respond by pointing to specific groupings of the evidence before the jury which could have been adopted by the jury in arriving at their verdicts. As the jury did not accept in full the arguments of either side, this argument is more persuasive than that advanced by the defendants.

Plaintiffs read the "offset" provisions of RSA 507:7-i[8] as somehow repealing the earlier-passed provisions of RSA 524:1-b[9] and its interpretation by the New Hampshire Supreme Court in Saltzman v. Saltzman, 124 N.H. 515, 520-21, 475 A.2d 1, 4 (1984). No known rule of statutory construction permits or requires such interpretation, and it is clear that, as Saltzman holds, the $750,000 Sears settlement is to be deducted from the total of verdict plus prejudgment interest, but interest on the settlement amount is to be offset from the date of such settlement.

---

[8]Adapted in 1986 as part of a so-called "tort reform" package of legislative bills, as to which there was a marked paucity of legislative hearings, RSA 507:7-i (Supp. 1994) requires the court, when a plaintiff's verdict has been returned, to reduce the verdict by the amount of any settlement release or covenant not to sue previously in effect as between plaintiff and other tortfeasors.

[9]Generally in effect since 1957, and frequently amended thereafter through 1969, RSA 524:1(b) provides for addition of interest from the date of the writ to the date of verdict.

As the Sears settlement was here approved on October 19, 1995, interest thereon should be offset from such date. The court finds that the offset of the settlement should first be applied to the Blue-Sky Law verdict, plus its interest, rather than to the common-law count.

The court also finds to be without merit the defendants' arguments that they are entitled to additional credit for the amount of the mortgage foreclosure and for earnings of the individual plaintiffs made from MMI subsequent to its sale to them. Any claims of plaintiffs for damages included a reduction for the amount of the foreclosure sale, and no known legal authority supports the claim for deduction of plaintiffs' earnings.

Finally, the court rejects defendants' claims that the verdicts returned necessarily included interest of the genre criticized as "double counting" by the court in Lakin v. Daniel Marr & Son Co., 732 F.2d 233, 238 (1st Cir. 1984). Neither the plaintiffs' arguments nor the court's damage instructions warranted any of the further deductions here sought by the defendants. The motion to alter or amend judgment is accordingly denied.

18

## 4. Conclusion

For the reasons hereinabove stated, the court has denied the defendants' motions seeking, respectively, judgment as a matter of law (document 185); a new trial (document 184); or to alter or amend judgment (document 186).

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

January 4, 1996

cc:   Randall F. Cooper, Esq.
      Steven J. Kantor, Esq.
      John L. Putnam, Esq.
      Kenneth H. Merritt, Esq.

19