USA v. Waltham, MA                    CV-05-302-SM  03/29/06

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


United States of America

   v.                                          Civil No. 05-cv-302-SM
                                              Opinion No. 2006 DNH 037
Land and Buildings Located at
99 Sheffield Road, Waltham,
Massachusetts, with all Appurtenances
and Improvements Thereon, Owned by
Delilah Property Services, Inc.,
a/k/a Delilan Property Services, Inc.


**REPORT AND RECOMMENDATION**


In this action, the government seeks civil forfeiture of
real property identified as land and buildings located at 99
Sheffield Road, Waltham, Massachusetts, alleging that the
property is subject to forfeiture because it constitutes the
proceeds of, or was derived from the proceeds of, a mail fraud
scheme.  The complaint was filed on August 31, 2005, and the
government served the putative claimants here within 28 days of
commencing this action.  No potential claimant to the property
responded to the government's complaint until January 6, 2006
when Delilah Property Services, Inc. ("Delilah"), Amy McPherson,
Stasy Ann McPherson, Sara Rose McPherson, Beatrice Berkman and

Alan William Berkman filed motions seeking leave to file verified claims and answers <u>nunc</u> <u>pro</u> <u>tunc</u>.  <u>See</u> Document Nos. 15, 16, 18, 20, 22, 24 and 26.[1]  The government filed an objection to these motions (document no. 29) and a separate motion to strike the putative claimants' verified claims and answers as untimely (document no. 28).  With the exception of Amy McPherson, the putative claimants filed objections to the motion to strike.  Delilah also filed a motion to amend its motion for leave to file (document no. 35) to which the government objects.

The above-referenced motions were referred to me for a recommended disposition.  For the reasons set forth below, I recommend that the court deny the motions for leave to file verified claims and answers because the putative claimants have not shown that their failures to timely file were the result of excusable neglect.  I recommend that the court deny Delilah's motion to amend its motion for leave to file on the basis of futility.  And I recommend that the court find that the government's motion to strike is moot.

<u>BACKGROUND</u>

The mail fraud scheme that the government alleges in its

---

[1]Document Nos. 16 and 18 are identical copies of the motion filed on behalf of Sara Rose McPherson.

complaint was allegedly perpetrated by Amy McPherson through Delilah, a New Hampshire corporation that Amy McPherson allegedly controlled. Delilah is the record owner of the defendant-in-rem. The government alleges that on February 28, 2005 Amy McPherson pled guilty to multiple counts of making false statements, in violation of 18 U.S.C. § 1001, related to her participation in a scheme through which she obtained, in total, more than $60,000 from the U.S. Department of Housing and Urban Development, the U.S. Department of Agriculture and the U.S. Department of Health and Human Services that she was not entitled to receive. Verified Compl., ¶ 17 (citing United States v. Amy McPherson, Cr. No. 03-175-SM). The government alleges that the defendant-in-rem is traceable to funds that Amy McPherson wrongly obtained from those government agencies. Id., ¶ 20.

The government commenced this action on August 31, 2005 by filing a verified complaint, notice of complaint and a motion for ex parte finding and endorsement of memorandum lis pendens pertaining to the defendant-in-rem. See Document Nos. 1-3. The government served copies of the complaint, notice of complaint, writ of entry and lis pendens by certified mail, return receipt requested, on the following persons:

3

- Gary M. Lenehan, Esq., on September 6, 2005;

- Amy McPherson on September 7, 2005;

- Beatrice Berkman on September 7, 2005;

- Alan William Berkman on September 16, 2005;

- Oscar Berkman on September 19, 2005;

- Sara Rose McPherson on September 20, 2005;

- Stasy Ann McPherson on September 28, 2005.

See Affidavits of Service (document Nos. 6-13); see also Declaration of Kimberly C. Cooper dated January 20, 2006 (attached to document no. 28) (describing the procedure that the United States followed for serving persons who were determined to potentially have an interest in the property).

On September 19, 2005, the United States received a letter from Alan Berkman requesting an extension of time to respond to the complaint. Cooper Decl., ¶ 8. Assistant United States Attorney John J. Farley responded to Mr. Berkman's request in a letter dated that same day. He addressed Mr. Berkman as Delilah's President. See Cooper Decl., Attachment No. 7.[2] Mr.

_____

[2]Alan Berkman admits that he is Delilah's President and that he was personally served with notice of this action on or about September 7, 2005. See Affidavit of Alan Berkman dated February 2, 2006, ¶¶ 6-7, attached to document no. 30. The government points out that the return receipt for service by certified mail on Alan Berkman is actually dated September 16, 2005.

Farley advised Mr. Berkman that if he needed an extension of time he needed to file a request for such with the court. Id. He further stated that under the applicable federal rules any claim needed to be filed by October 17, 2005, and that if he failed to file a timely claim or make a timely request for an extension of time his claim might be found to be in default. Id.

Similarly, on September 20, 2005, the United States received a letter from Stasy McPherson requesting an extension of time to respond to the complaint. Cooper Decl., ¶ 9. In a letter dated September 27, 2005, Mr. Farley responded to Ms. McPherson's letter addressing her as Delilah's Secretary. Cooper Decl., Attachment No. 8.[3] Mr. Farley advised Ms. McPherson that any request for an extension of time needed to be directed to the court, that under the applicable rules any claim to the defendant-in-rem was required to be filed by October 17, 2005, and that if Ms. McPherson did not either file a timely claim or make a timely request for an extension of time with the court her claim could be found to be in default. Id. The United States

---

[3]Stasy McPherson admits that she is Delilah's Registered Agent. See Affidavit of Stasy Ann McPherson dated February 1, 2006, ¶ 6, attached to document no. 33. Ms. McPherson further admits that she was personally served with notice of this action on or about September 28, 2005. Id., ¶ 7.

did not receive any further correspondence from either Mr. Berkman or Ms. McPherson, see Cooper Decl., ¶¶ 8-9.

In their motions for leave to file their verified claims and answers, all filed by the same counsel on January 6, 2006, the putative claimants acknowledge that their verified claims should have been filed with the court in October 2005, and that their answers to the complaint were due on various dates in late October and November 2005. They did not provide any reason for the late filing of their verified claims and answers in their motions for leave to file, but asserted that the government would not be prejudiced by the late filing of their claims. The government filed an objection and a motion to strike.

In response to the government's motion to strike, Stasy McPherson, Sara Rose McPherson, Alan Berkman and Beatrice Berkman argue that their late filing should be excused as the result of excusable neglect attributable to the government's representations. For its part, Delilah argues that the government did not strictly comply with the applicable rules pertaining to service of process, execution of process and return of process as to Delilah, and therefore the filing of Delilah's verified claim and answer was not untimely. Delilah seeks to

6

amend its motion for leave to file to remove its acknowledgment that its verified claim and answer is late based on its improper service argument and its current contention that the filing of its verified claim and answer should not be considered untimely. See Mot. to Amend Mot. to File Verified Claim and Answer Nunc Pro Tunc, ¶ 4.

DISCUSSION

I.   Motions for Leave to File Verified Claims and Answers

In a civil forfeiture action, the defendant is the property subject to forfeiture. United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 40 (1st Cir. 2003). A person who claims an interest in the property must intervene in the forfeiture proceeding in accordance with the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules"). Id.; United States v. $23,000 In U.S. Currency, 356 F.3d 157, 161 (1st Cir. 2004). Supplemental Rule C(6) provides, in relevant part, that:

> In an in rem forfeiture action for violation of a
> federal statute:
>
> (i) a person who asserts an interest in or right
> against the property that is the subject of the action

7

must file a verified statement[4] identifying the interest or right:

(A) within 30 days after the earlier of (1) the date of service of the Government's complaint or (2) completed publication of notice under Rule C(4), or

(B) within the time that the court allows.

Supplemental Rule C(6)(a)(i). A party who fails to assert his interest in the subject property pursuant to the requirements of Supplemental Rule C(6) normally lacks standing to contest forfeiture of the property. One-Sixth Share, 326 F.3d at 41; United States v. One Dairy Farm, 918 F.2d 310, 311 (1st Cir. 1990); see also Ortiz-Cameron v. DEA, 139 F.3d 4, 6 (1st Cir. 1998) ("If a putative claimant who has received proper notice fails to file within Rule C(6)'s time limits, he or she may not bring a future claim for the properties at issue").

Here, each of the putative claimants acknowledged in their motions for leave to file that they received service of the government's civil forfeiture complaint and related documents. See Document Nos. 15, 16, 18, 20, 22, 24 and 26, ¶ 2. And they

---

[4]The putative claimants have filed motions seeking leave to file verified claims. The Supplemental Rules were amended in 2000 and now require the filing of a "verified statement" of interest rather than a "verified claim." See Supplemental Rule C advisory committee's notes on the 2000 Amendment; see also $23,000 In U.S. Currency, 356 F.3d at 161 n.3. This distinction is not material to my recommended disposition.

8

admitted that their verified claims were due in October 2005. See id., ¶ 3. None of the putative claimants petitioned the court for an extension of time to assert their interest in the property under Supplemental Rule C(6)(a)(i)(B). Accordingly, the government argues that the court should find that the putative claimants lack standing to challenge the forfeiture because their filings are untimely. The legal authorities support the government's position. See One Dairy Farm, 918 F.2d at 312 (citing cases for the proposition that strict adherence to the filing requirements of Rule C(6) is required in order to contest a civil forfeiture); United States v. $10,000 in U.S. Funds, 863 F. Supp. 812, 814 (S.D. Ill. 1994) ("courts have taken a severe stance against a claimant who has not properly perfected his claim in a forfeiture proceeding in a timely manner").

As the government acknowledges, however, the courts do not preclude untimely Rule C(6) claims in all circumstances. In One Dairy Farm, for instance, the First Circuit recognized that technical noncompliance with the requirements of Rule C(6) has been excused in limited instances based upon consideration of mitigating factors such as: (1) whether the claimant made a good faith attempt to file a claim on time; (2) whether the claimant

9

relied detrimentally on misinformation from a governmental agency; or (3) whether the claimant expended considerable resources preparing the case for trial.  Id.; see also United States v. $100,348.00 In U.S. Currency, 354 F.3d 1110, 1117-18 (9th Cir. 2004) (discussing similar lists of mitigating factors considered by courts in the Ninth, Seventh and Fourth Circuit Courts of Appeals in deciding whether to grant leave to file untimely claims).

Other courts have addressed the mitigating factors in the cases cited above within the context of determining whether a party seeking to file a late claim under Rule C(6) could demonstrate "excusable neglect" under Fed. R. Civ. P. 6(b).[5]  See United States v. Borromeo, 945 F.2d 750, 753 (4th Cir. 1991); United States v. $230,963.88 In U.S. Currency, More or Less, No. Civ. 00-378-B, 2000 WL 1745130 at *1 (D.N.H. Nov. 16, 2000). Rule 6(b) provides in relevant part:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified

---

[5]The Supplemental Rules provide that the general rules of the Federal Rules of Civil Procedure apply to actions in rem except to the extent that the those rules are inconsistent with the Supplemental Rules.  Supplemental Rule A.

10

period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Civ. P. 6(b). The determination of whether excusable neglect exists is equitable in nature. Mirpuri v. ACT Mfg., Inc., 212 F.3d 624, 630 (1st Cir. 2000) (citing Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380, 395 (1993)). The court must consider all of the relevant circumstances pertaining to the movant's failure to meet the filing deadline including the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether the delay was in the reasonable control of the movant, and whether the movant acted in good faith. Mirpuri, 212 F.3d at 630-631; $230,963.88 In U.S. Currency, 2000 WL 1745130 at *2. Standing alone, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." Pioneer, 507 U.S. at 392. Rather, the party seeking to file after the expiration of a specified period "must demonstrate unique or extraordinary circumstances." Mirpuri, 212 F.3d at 631.

In this case, the putative claimants assert that the late filing of their claims should be allowed because their failure to

11

timely file was the result of excusable neglect. I consider their support for this argument next.

A. Prejudice and Delay

Since the prejudice and length of delay factors are closely related, I consider them together. The purpose behind Rule C(6) is "to require claimants to come forward as quickly as possible after the initiation of forfeiture proceedings, so that the court may hear all interested parties and resolve the dispute without delay." Ortiz-Cameron, 139 F.3d at 6 (quoting United States v. Various Computers & Computer Equip., 82 F.3d 582, 585 (3d Cir. 1996)); see also United States v. One Urban Lot Located at 1 Street A-1, 885 F.2d 994, 1001 (1st Cir. 1989) (finding that the Rule C(6) filing deadlines exist to "force claimants to come forward as soon as possible after forfeiture proceedings have begun and to prevent false claims"). The First Circuit has found that the time limits in Rule C(6) are analogous to a statute of limitations. Ortiz-Cameron, 139 F.3d at 6. Here, the putative claimants' verified statements were more than two months late when they filed the instant motions for leave. Therefore, the delay factor clearly weighs against them.

Weighing in the putative claimants' favor is that the danger

of prejudice to the government at this early stage of the proceedings is slight.  The government argues that it will be prejudiced if it is required to respond to these untimely filings, but as the court found in $230,963.88 In U.S. Currency, "[t]he mere likelihood that the government would not be able to obtain an entry of default is not cognizable prejudice for purposes of a Rule 6(b) inquiry."  2000 WL 1745130 at *2 (citing Pratt v. Philbrook, 109 F.3d 18, 22 (1st Cir. 1997)).

B.    The Reason for the Delay

Stasy McPherson, Sara Rose McPherson, Alan Berkman and Beatrice Berkman argue that their late filing should be permitted because the delay was the result of detrimental reliance on comments made to them by Amy McPherson that the United States would dismiss this civil forfeiture action upon the settlement of a related civil false claims case.  In support of their assertions, they attach to their affidavits a copy of a draft consent decree and order of payment dated November 21, 2005.  See Document Nos. 30-33.

The government provides three persuasive reasons for rejecting the putative claimants' argument that the government bears responsibility for their failure to act timely.  First, the

13

putative claimants have not cited any affirmative misrepresentations made directly to them by the government that could have induced them to fail to file a timely verified claim. Indeed, in responses to requests for extensions of time made by Alan Berkman and Stasy McPherson, an Assistant United States Attorney emphasized that they needed to either file a timely claim or a timely request for an extension of time to file with the court. There is no evidence in the record that the government ever explicitly or implicitly encouraged the putative claimants not to assert their interests in this action. Second, while the putative claimants refer generally to conversations that they had with Amy McPherson that caused them to believe that this action might be dismissed, none of them state that such conversations occurred before the expiration of their time to assert their interest in the property. And third, while the putative claimants suggest that they relied to their detriment on a draft consent decree that was being negotiated by Amy McPherson and the United States, that draft was dated November 21, 2005, which is well after the date that the putative claimants were required to file their verified statements of interest. Therefore, the draft consent decree could not have been the

14

reason for their failure to act timely. For all these reasons, the putative claimants' assertions of the government's responsibility for their failure to act are wholly unpersuasive.

C. The Movants' Good Faith

Finally, the court must consider whether the putative claimants acted in good faith. I find no facts that weigh in the putative claimant's favor on this factor. Despite having actual notice of this action, the putative claimants neither petitioned the court for an extension of time, nor filed any other pleading with the court that could be deemed a good faith attempt to comply with Rule C(6) before filing the instant motions for leave to file on January 6, 2006. And as discussed above, the putative claimants' only asserted reason for their delay, reliance on the government's representations, is not supported by the record. To the extent that the putative claimants may have relied on the hope that this action would be dismissed as part of the settlement of a related case, such speculation cannot be considered an adequate reason for failing to comply with the requirements of Rule C(6). Cf. Valderrama v. United States, 326 F. Supp. 2d 1333, 1338 (S.D. Fla. 2004) (where the plaintiff failed to timely assert his interest in property in an

15

administrative forfeiture proceeding, the court found that an objectively reasonable person would have realized that the government's letters regarding the commencement of proceedings, and not a purported settlement agreement that had never been put in writing, established the government's position).

D.   Conclusion

The putative claimants first sought leave to assert their interest in this action more than two months after their Rule C(6) filings were due, they have not advanced any good reason for their delay, and they did not make a good faith attempt to timely comply with Rule C(6).  I find no facts that suggest that the putative claimants' failure to act timely resulted from unique or extraordinary circumstances.  Therefore, considering all of the circumstances, I find that the putative claimants' failure to timely file their verified statements and answers should not be deemed excusable neglect.  Accordingly, I further find that the putative claimants' motions for leave to file should be denied because they now lack standing to challenge the forfeiture.  See One Dairy Farm, 918 F.2d at 313 (affirming a district court's decision to dismiss the appellant's claims because they failed to file a claim or answer within the time prescribed by Rule C(6)

16

and did not advance any reason that would warrant relieving the putative claimants from the consequences of their inaction).

II.  Delilah's Motion for Leave to Amend

Delilah argues that the government did not strictly comply with the applicable rules pertaining to service of process, execution of process and return of process, and therefore the filing of Delilah's verified claim and answer was not untimely. Delilah seeks to amend its motion for leave to file based on its improper service argument and its contention that the filing of its verified claim and answer should not be considered untimely.

Delilah bases its improper service argument on the First Circuit's findings in United States v. Approximately Two Thousand, Five Hundred Thirty-Eight Point Eighty-Five Shares (2,538.85) etc., 988 F.2d 1281 (1st Cir. 1993), that:

> "Process" in an in rem action consists fundamentally of the warrant for arrest of the property to be seized. "Execution" of such "process" consists of service of the arrest warrant upon the defendant property, after which the marshal files with the court proof of service.

988 F.2d at 1282.  Delilah fails to recognize, however, that there have been changes to the forfeiture law, particularly as it

17

applies to the civil forfeiture of real property,[6] since the First Circuit decided <u>Approximately 2,538.85 Shares</u> that invalidate Delilah's argument.  In particular, Congress enacted the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), which applies to all forfeiture proceedings commenced on or after August 23, 2000.  Pub. L. No. 106-185, § 21, 114 Stat. 202, 225; <u>see also</u> <u>One-Sixth Share</u>, 326 F.3d at 40 n.3 (describing CAFRA as a substantial overhaul of federal civil asset forfeiture).  "CAFRA provides for a specific procedure in all forfeiture proceedings involving real property that overrides the more general requirements of the Supplemental Rules."  <u>United States v. 630 Ardmore Drive</u>, 178 F. Supp. 2d 572, 578 (M.D.N.C. 2001); <u>see also</u> 18 U.S.C. § 985.

Under § 985, the government initiates a civil forfeiture action against real property by:

(A) filing a complaint of forfeiture;

---

[6]Delilah asserts in its memorandum of law in support of its objection to the motion to strike that the government seeks the forfeiture of shares of stock of Delilah Property Services, Inc. <u>See</u> Document No. 36.  Delilah is mistaken.  In its verified complaint, the government clearly identifies the defendant-in-rem as "Land and Buildings Located at 99 Sheffield Road, Waltham, Massachusetts, with all Appurtenances and Improvements Thereon owned by Delilah Property Services, Inc., a/k/a Delilan Property Services, Inc."  <u>See</u> Document No. 1 (Verified Compl. at 1).

18

> (B) posting a notice of the complaint on the property; and
>
> (C) serving notice on the property owner, along with a copy of the complaint.

18 U.S.C. § 985(c)(1). As long as the real property has been posted in accordance with 18 U.S.C. § 985(c), and there has been no allegation that it was not in this case, the government is not required to obtain a summons and warrant for arrest of real property. 18 U.S.C. § 985(c)(3); 630 Ardmore Drive, 178 F. Supp. 2d at 578. I find no support for Delilah's contention that the Supplemental Rules impose additional service requirements on the government in this case.

Although Delilah has not argued in the alternative that the government's service of notice in this case violated its due process rights, the facts show that any such claim would fail. The Due Process Clause of the Fifth Amendment requires the provision of "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also Dusenbery v. United States, 534 U.S. 161, 170 (2002) (finding in a forfeiture case that the government

19

may demonstrate that it satisfied the requirements of due process even in the absence of actual notice to the claimant where the government took steps that were reasonably certain to inform those affected of the pendency of the action). In this case, there is no question that the government met its burden.

Alan Berkman, Delilah's President, and Stasy McPherson, Delilah's Registered Agent, both submitted affidavits acknowledging that they received service of this action in September 2005. Even though the notice that Alan Berkman and Stasy McPherson received was not specifically addressed to Delilah, I find that providing notice and a copy of the complaint to Delilah's President and Registered Agent satisfies the requirements of 18 U.S.C. § 985(c)(1)(C) and Delilah's right to due process because such notice was reasonably calculated, under all the circumstances, to apprise Delilah of the pendency of this action. Furthermore, the facts demonstrate that Delilah had actual notice of this action as evidenced by Alan Berkman's and Stasy McPherson's affidavits and communications with the United States Attorney's Office in their corporate capacities regarding this action before Delilah's Rule C(6) filings were due.

Since the facts show that Delilah received adequate notice

20

of this action in September 2005, the Rule C(6) time period for responding to the government's complaint was triggered at that time. Therefore, Delilah's motion for leave to file its verified claim and answer, submitted on January 6, 2006, is in fact untimely. Accordingly, Delilah's motion to amend, which seeks to withdraw its acknowledgment that its Rule C(6) filings are late, should be denied because it is futile.

III. The Government's Motion To Strike

Since I recommend that the court deny the putative claimant's motions for leave to file verified claims and answers nunc pro tunc, I further find that the government's motion to strike the putative claimants' verified claims and answers should be deemed moot.

CONCLUSION

For the reasons set forth above, I recommend that the motions to file verified claims and answers nunc pro tunc (document nos. 15, 16, 18, 20, 22, 24 and 26) be denied. I recommend that the motion to amend motion to file verified claim and answer nunc pro tunc filed by Delilah Property Services, Inc. (document no. 35) be denied. I recommend that the government's motion to strike untimely verified claims and answers (document

21

no. 28) be deemed moot.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_James R. Muirhead_
James R. Muirhead
United States Magistrate Judge

Date:  March 29, 2006

cc:  John J. Farley, Esq.
     Rodkey Craighead, Jr., Esq.

22